Daniel, J.
delivered the opinion of the court.
The court is of opinion that the Circuit court did not err in dismissing the bill of the appellee, so far as it sought a rescission of the contract of the 9th May-1839, in the bill and proceedings mentioned. But the court is also further of opinion that the Circuit court erred in holding that the appellee was entitled to relief to the extent of his portion of the indebtedness of the partnership concern of David and John Sexton beyond the sum of 3000 dollars, and in perpetuating the injunction, granted to prevent the appellant from collecting the amount of his judgment at law recovered by him against the ajipellee for 1800 dollars, with interest from the 9th of May 1842, as to the sum of 1618 dollars and 48J cents, the half of such excess reported by the commissioner; this comrt being of opinion that the pleadings and proofs furnish no grounds for relief to the appellee to any extent whatever. The main allegations on which the relief prayed for was sought, were that the appellant represented to the appellee that the liabilities of the concern did not exceed 3000 dollars, when he in fact knew that they greatly exceeded the sum of 5000 dollars; and that he promised and agreed never to oppose the appellee in business at Wytheville. The last allegation is explicitly denied in the answer, and no proof whatever is to be found in the record to support it; and it therefore becomes unnecessary to consider whether, if proved, it would have furnished any ground for the relief sought. With respect to the first allegation, the appellant in his answer denies that he represented to the appellee that the liabilities of the concern did not exceed 3000 dollars. He states that a regular set of books was not kept, and that it was impossible to ascertain certainly the amount of the outstanding debts against the firm. That when engaged in the negotiation which led to the contract of the 9th May *213 1839, he hastily examined the books and papers to ascertain as near as practicable the amount owing to the firm, and its liabilities; that he does not remember whether the appellee requested him to give him a list of the outstanding debts or not; that he did endeavor from his recollection to ascertain the amount of debts outstanding against the firm, and to make a list of them. In this way he thinks he arrived at the conclusion that the outstanding notes and bonds owing by the firm amounted to between 3000 dollars and 4000 dollars; that open accounts were not taken into his calculation, because they were shown by the books; that he never represented the outstanding debts against the firm as amounting to any precise sum, because he did not know their exact amount, and because his estimate was made from memory only, as he believes was well known to the. appellee.
It appears that the parties were not on speaking terms at the time of the negotiation which led to the contract of dissolution, and had not been for some time previous. They had no personal interview pending the negotiation; and Richardson, who mediated as a friend in bringing about an adjustment, is the only witness who speaks positively in reference to any representation made by either party touching the subjects of the contract. He states that he was frequently in the room of the appellant whilst he was making out his estimates for a proposition to buy or sell ,* that he (the appellant) estimated the value of the whole interest of the concern at about 18,000 dollars; and that he represented the debt due by the firm as being between 2000 dollars and 3000 dollars; and the debt due to the firm as being between 8000 dollars and 9000 dollars. It is to be observed that Richardson, though examined twice, does not in either of his depositions state that this representation was made for the information of the appellee, or that it *214 was in fact ever communicated to Mm; and if Ms testimony in tMs respect is to be regarded as directly contradicting so much of the answer of the appellant as denies that he represented to the appellee that the debts due by the concern did not exceed the sum of 3000 dollars, it must be also further observed that this testimony stands unsupported by the other proofs in the record. It is in proof that no regular set of books was kept, and that the appellant, when urged by the appellee either to sell out his own interest or to purchase that of the appellee, desired to defer the negotiation ; expressed a wish that the firm should continue in existence for a brief period longer, in order that the state of its affairs might be better ascertained, and each party the better enabled to arrive at a correct estimate of the value of the subjects to be bought' and sold ; and that he did not finally consent to enter upon the negotiation until hastened by a threat on the part of the appellee that he would file a bill for bringing the concern to a close, if he did not come to some conclusion at once; and that he then proceeded to estimate the value of the subjects of the treaty and to make the proposals, either to buy or sell, which resulted in the purchase of his interest by the appellee. It is true that Etler states that he held a conversation with the appellant a few days after the sale, in which the appellant stated that he had offered and was willing to take or give the sum of 9000 dollars for the half of the concern; that a great deal of money was due to the firm; between 7000 dollars and 8000 dollars; and that the debt due by the firm did not exceed 3000 dollars. It is also true that Ryder states that the appellant, in a conversation with him a day or two after the contract of dissolution was entered into, told the witness that there were S000 dollars due the concern, and that he thought there was not more than 3000 dollars due from the concern; and that on his (the *215 witness) remarking that the appellee could never pay him in this world, the appellant replied that he did not see how he could help it, as there was about 5000 dollars due to the concern after paying the debts. Neither of these witnesses, however, disclose any admission on the part of the appellant that he had made any representation to the appellee in relation to the amount of debt due by the concern; and their testimony does not conflict with the idea, that any statements, made by the appellant to Richardson in reference to the amount of the indebtedness of the concern, were mere expressions of opinion or conjectural estimates hastily made from memory and without any design that they should be understood by Richardson as representations of the state of the outstanding debt, based on precise information. We therefore concur with the judge of the Circuit court in the belief expressed in his written opinion, that the record does not furnish the proof of any fraudulent representations made by the appellant in reference to the subject of controversy. We feel justified in going a step further and expressing the belief that the pleadings and proofs fail to disclose the practice of any dissimulation or the resort to any artifice on the part of the appellant to entice the appellee into the contract, or to mislead him as to the probable value of any matter that was the subject of their negotiation. As most if not all of the debts due by the concern were contracted by the appellant, and no regular books had been kept to which the appellee could resort for information as to their precise amount, we concede that the position of the appellant called for the exercise of the utmost good faith on his part. He was bound not only to disclose truly any information in his possession that might be called for, but if he perceived that the appellee was laboring under incorrect views in reference to the amount of the debt due by the concern, by *216 which he might be misled into too high an offer for the interest to be sold, it was his duty to furnish all the data he might have, by which such views might be corrected and the mischief prevented. We do not, however, discover in the case the proof of any effort on the part of the appellant to abuse the confidence of the appellee, or to avail himself of any unfair advantage. We do not perceive that he has withheld any information called for, or that he has knowingly acquiesced in any mistaken views or estimates on the part of the appellee by which he might be ensnared into self deception and loss.
The bill, it is true, charges that pending the negotiation the appellee had frequently expressed his strong desire to purchase the interest of the concern, and continue the business, and also his willingness to give 9000 dollars for the moiety belonging to the appellant; that information of this state of things was communicated to the appellant, and that in consequence of it he made the proposition, either to buy or sell, at the price of 9000 dollars. The charge, though not made in terms, is thus inferentially suggested, that the appellant in making the proposition was not in fact governed by the belief that 9000 dollars was the fair value of the interest, and by an honest desire either to give or take that amount for it, but by the belief that the appellee was acting under too high an estimate of the real value of the subject, in which he would probably be confirmed by such a proposition, and thus misled into an improvident bargain. In reference to this charge, it is sufficient to say that the answer expressly denies it, and that there is nothing in the testimony tending in the slightest degree to impeach the candor or sincerity of the appellant in making the proposition.
The judge of the Circuit court, whilst he acquits the appellant of all moral fraud in the transaction, yet *217 holds him liable, on the ground that he has made mistaken representations about matters of business, the subject of the contract in relation to which he had information not possessed by the appellee; that the appellee has been misled by the representations, and consequently injured, and that the appellant is responsible for the consequences. The responsibility in some form and to some extent could not be denied, if the facts upon which it is based by the judge were admitted to be true. Neither of the facts, in our opinion however, appear in the case. We have already expressed our belief that the appellant made no representation as to any specific amount of debt as due by the concern; and we have no satisfactory data by which to arrive at a conclusion as to the amount which the appellee believed to exist at the time of entering into the contract; whilst all the proofs and circumstances go to negative the idea that the appellee based his views of the value of the interest purchased on any representation of the debts and liabilities of the concern which may have been reported to him as coming from the appellant. Instead of reposing confidence in the supposed superior knowledge of the appellant as to the extent of the debt due by the firm, it is in proof that the appellee greatly distrusted his partner, and regarded his conduct and statements with the utmost suspicion.
What estimates he made with a view to entering into the contract, or upon what data they were based, we are not informed by the evidence. He knew the value of the real estate; he was possessed of full information in respect to that branch of the business which had been conducted by himself; and had, doubtless, a general knowledge and memory of the purchases which had been made for the firm. He knew, however, that there were no books furnishing precise information as to the extent of the indebtedness of the *218 firm, and his feelings of distrust and suspicion towards the other contracting party stood in the way of his ■ relying on any statements which might come from him in relation to the matter. If he did not mean therefore to enter upon a contract of hazard, ordinary prudence would have required that he should postpone a settlement or adjustment till more accurate information as to the true condition and value of the different subjects to be treated about could be obtained. Yet we find him rejecting the proposal to defer for a while the conclusion of the bargain, thus discarding the only means of avoiding all risque, and hurrying the negotiation to a close. ' He cannot complain that he is held to have contemplated the hazard he might encounter, and to have intended to incur and abide by it. If .under .these circumstances his anticipations of profit have not been fully realized, we cannot recognize the equity that would visit his disappointment on the other contracting party who pleaded for further time; and when it was denied, still left it to the election of the other party, either to give or take the price at which the interest was contracted for. The extent to which the value of the subject was to be affected by the outstanding debt was with each of the parties a matter of doubt and speculation, and neither can rightfully complain if the other acted with good faith. We can discover no want of it on the part of-the appellant. We do not see that he has either said or done, or improperly omitted to say or do, anything whereby the appellee might be deceived and injured. We find in the case no ground on which the relief asked, or any relief in equity, can be properly based. And we come to this conclusion with the less reluctance, inasmuch as it is not made apparent that the appellee, even after allowing for the disappointment occasioned by the outstanding debt turning out to be larger than he anticipated, has made a hard bargain. *219 Be this as it may, however, we do not perceive that the bargain was in any respect unfair, and know of no rule in equity by which the appellee can be relieved against its consequences. We think the injunction to the judgment on the note falling due on the 9th May 1842, ought to have been dissolved in whole with damages, and the bill dismissed with costs, &c. Decree accordingly.
Decree reversed, injunction dissolved, and bill dismissed.